UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 08-24 |
| --- | --- | --- |
| VERSUS | * | |
| CHARLES NEUMAN | * | SECTION "L" |

### ORDER & REASONS

The Court has pending before it Defendant Charles Neuman's Motion to Reconsider the Order of May 7, 2012 Denying Defendant's Rule 33 Motion (Rec. Doc. 282).[1] The Court does not need an opposition from the Government to resolve this motion.

### I. FACTUAL BACKGROUND

### A. Defendant's Indictment, Trial, and Conviction

This case arises out of Defendant's trafficking in counterfeit Nike shoes and other products in the New Orleans area. On February 1, 2008, a grand jury returned a five-count Indictment against the Defendant Charles Neuman and a co-Defendant. On August 1, 2008, the Government filed a six-count Superseding Indictment alleging that the Defendant and two co-Defendants sold various counterfeit goods in violation of Title 18, United State Code, Sections 371, 545, 2320, and 2322. On January 9, 2009, a grand jury returned a five-count Second Superseding Indictment against only Defendant (Rec. Doc. 109). The Second Superseding Indictment charged him with conspiracy to intentionally traffic in counterfeit goods, trafficking

---

[1] Defendant's motion for relief under 28 U.S.C. § 2255 (Rec. Doc. 269) was recently taken under submission by the Court.

in counterfeit goods, concealing and facilitating the transportation of merchandise imported contrary to law, and being a felon in possession of a firearm.

Defendant waived the thirty-day restriction of 18 U.S.C. § 3161(c)(2) and trial commenced on January 26, 2009. (Rec. Doc. 152). At a four-day trial, the undisputed testimony established that Defendant's warehouse, where he stored the counterfeit shoes and goods, had previously been robbed by a group of six masked men armed with guns and rifles. Defendant and several of his employees were made to lay down on the floor and were bound with duct tape. Shortly after that robbery Defendant, his employees Justin Nichols and John Sterling, and one other employee visited a gun show. Defendant purchased a stun gun. John Sterling purchased a 9mm handgun and a .380 caliber Kel-Tec revolver. Sterling purchased the two guns with money loaned by Defendant.

At trial, Defendant's employee Justin Nichols testified that the .380 caliber revolver was kept at the warehouse office in a desk for protection. (Rec. Doc. 254, 441:5-11). He testified that he had seen Defendant handle the gun at the warehouse. (*Id.* at 441:12-14). Pou Vatthongxay, Defendant's girlfriend, testified that Defendant had brought the .380 caliber gun back to their apartment, where he stored it under the sofa for several months. (Rec. Doc. 254, 385:2-21). She testified that on the day that ICE agents executed a search warrant at the warehouse, Defendant called her and asked her to "do something" about the gun under the sofa. *Id.* at 387:2-13. She hid the gun in the fireplace, where it evaded discovery by ICE agents searching the apartment. *Id.* at 387:15-388:15. Later, Defendant asked her where she put the gun, retrieved it, and then called John Sterling to come by and pick up the gun. *Id.* at 389:2-25.

John Sterling testified that he purchased the .380 caliber gun with Defendant's money at a gun show, and that the gun was initially kept at the warehouse. *Id.* at 509:22-510:18, 512:22-

2

513:5. Mr. Sterling testified that Defendant called him after the ICE raid on the warehouse to come to Defendant's apartment, at which time Defendant gave him the .380 caliber gun. *Id.* at 513:25-514:19. Mr. Sterling maintained possession of the gun until he handed it over to ICE agents. *Id.* at 515:10-25. He testified that:

> The only time I seen him [Defendant] with this gun is own two occasions, when we got it that day at the gun shop and I gave it to him for the warehouse, you know, lock it up in the – but we had an alarm in there, you know, and the day he gave it back to me in the front of his house. That's the only two times.

*Id.* at 524:15-21.

The Court administered the Fifth Circuit pattern jury instruction for 18 U.S.C. § 922(g)(1), felon in possession of a firearm, as well as the pattern jury instruction on the meaning of "possession." The jury found Mr. Neuman guilty as to all five counts in the Second Superseding Indictment, including Count 5, the firearm possession charge. (Rec. Doc. 166). Sentencing took place on July 30, 2009. Mr. Neuman was sentenced to 210 months imprisonment on Count 5, the firearm possession charge. (Rec. Doc. 235).[2] He appealed to the Fifth Circuit Court of Appeals, which affirmed in all respects. *United States v. Neuman*, 406 F. App'x 847 (5th Cir. 2010). He did not challenge the conviction on the firearm possession charge on appeal. *Id.* at 849 n.1.

**B.     Defendant's Motion for New Trial Pursuant to Rule 33 and Motion for Reconsideration**

On July 25, 2011, Defendant filed a Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Rec. Doc. 265). He submitted three "affidavits" as

---

[2] He was also sentenced to 60 months as to Count 1, 120 months as to Counts 2 and 3, and 210 months as to Count 4, all to run concurrently.

newly-discovered evidence purportedly calling into question his conviction on Count 5. He argued that two trial witnesses have subsequently made statements inconsistent with their trial testimony, which undermines their credibility and the version of the facts adduced at trial. The Court reviewed the submitted materials and denied the motion for a new trial on the grounds that, even if the Plaintiff had presented non-hearsay evidence, the material would not likely have resulted in an acquittal if introduced at trial. (Rec. Doc. 278). On May 23, 2012, Defendant filed a notice of appeal from the Court's Order and Reasons. (Rec. Doc. 280).

On June 7, two weeks after appealing the Court's Order and Reasons denying his motion for a new trial, Defendant filed a motion for reconsideration of that same Order and Reasons. (Rec. Doc. 282). In support, he offers legal argument regarding the Court's alleged misconstrual of his evidence, and produces yet another affidavit from a private investigator who spoke to a trial witness. The private investigator, Robert M. Garcia, states that he interviewed Justin Nichols, although the affidavit does not state when this interview took place. (Rec. Doc. 282 at 12). Again, "Justin Nichols refused to give a statement or sign an affidavit as he did not want to get involved in ongoing proceedings." (*Id.*). The investigator reports that Nichols "did provide the following information:"

1. He was interviewed by the prosecutors prior to Charles Neuman's trial.
2. When he was questioned by the prosecutors about the gun found in the van registered to Charles Neuman, he stated that he (Nichols) had borrowed the Keltec 380 caliber gun from John Sterling.
3. When he was questioned by the prosecutors he answered all questions truthfully and to the best of his knowledge.

*Id.* Defendant argues that the jury heard false testimony regarding the circumstances surrounding possession of the gun and its eventual return to the possession of John Sterling, and that had the jury heard the correct testimony set forth in his submitted materials, the jury would

4

have acquitted him on Count 5.

## II.    LAW & ANALYSIS

The Court lacks jurisdiction to address the motion for reconsideration. Generally, filing a notice of appeal divests the district court of jurisdiction over the matters involved in the appeal, in both civil and criminal cases. *See United States v. Brooks*, 145 F.3d 446, 455-56 (1st Cir. 1998). Federal Rule of Appellate Procedure 4(b)(3) provides an exception under certain circumstances, but that Rule appears not to apply because Defendant has already taken an appeal from his judgment of conviction and now appeals only a post-appeal motion for a new trial. Because Defendant has already filed his notice of appeal, the motion is denied for lack of jurisdiction.

However, were the Court to possess jurisdiction, the motion would be denied as meritless. Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). "Motions for new trial based on newly discovered evidence are disfavored and reviewed with great caution." *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004). "As a general rule, there are five prerequisites (typically referred to as the *Berry* rule) that must be met to justify a new trial on the ground of newly discovered evidence." *Id.* Those factors require the defendant to prove that:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id.* Failure to show any of these factors mandates denial of a motion for new trial. *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir. 1996). In its discretion, the Court may rule on a motion for a new trial without holding an evidentiary hearing, particularly in light of the Court's "previously acquired familiarity with the evidence." *See United States v. Blackthorne*, 378 F.3d 449, 455-56 (5th Cir. 2004).

Nothing in the original motion for new trial or in Defendant's motion for reconsideration undermines the evidence adduced at trial that Defendant called John Sterling to pick up the gun from Defendant. Nothing in the original motion for new trial or in Defendant's motion for reconsideration suggests that John Sterling gave false testimony, let alone that the Government knew Sterling gave false testimony. The Court also notes that, if Sterling had in fact offered false testimony at trial, it was regarding "transactions or events of which [Defendant] had firsthand knowledge." *See United States v. MMR Corp.*, 954 F.2d 1040, 1049-50 (5th Cir. 1992) (affirming denial of motion for new trial without evidentiary hearing on basis of purported recantation by government's chief witness). Defendant "would have known this immediately," and "was able to assist counsel in trying to impeach [Sterling], and could have taken the stand to do so himself." *See id.* In short, there is no basis whatsoever for reconsidering the Court's Order and Reasons or for granting a new trial on Count 5.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration (Rec. Doc. 282) is DENIED, either for lack of jurisdiction or on the merits.

New Orleans, Louisiana, this 18th day of June, 2012.

UNITED STATES DISTRICT JUDGE