# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 08-24 |
|---|---|---|
| VERSUS | * | |
| CHARLES NEUMAN | * | SECTION "L" |

## ORDER & REASONS

The Court has pending before it Defendant Charles Neuman's Motion to Vacate, Correct, or Set Aside Sentence Under 28 U.S.C. § 2255. (Rec. Doc. 269). The Court has reviewed the briefs and the applicable law, and now issues this Order and Reasons.

## I. FACTUAL BACKGROUND

This case arises out of Defendant's trafficking in counterfeit Nike shoes and other products in the New Orleans area. On February 1, 2008, a grand jury returned a five-count Indictment against the Defendant Charles Neuman and a co-Defendant. On August 1, 2008, the Government filed a six-count Superseding Indictment alleging that the Defendant and two co-Defendants sold various counterfeit goods in violation of Title 18, United States Code, Sections 371, 545, 2320, and 2322. On January 9, 2009, a grand jury returned a five-count Second Superseding Indictment against only Defendant. (Rec. Doc. 109). The Second Superseding Indictment charged him with conspiracy to intentionally traffic in counterfeit goods, trafficking in counterfeit goods, concealing and facilitating the transportation of merchandise imported contrary to law, and being a felon in possession of a firearm.

Defendant waived the thirty-day restriction of 18 U.S.C. § 3161(c)(2) and trial

commenced on January 26, 2009. (Rec. Doc. 152). At a four-day trial, the undisputed testimony established that Defendant's warehouse, where he stored the counterfeit shoes and goods, had previously been robbed by a group of six masked men armed with guns and rifles. Defendant and several of his employees were made to lay down on the floor and were bound with duct tape. Shortly after that robbery Defendant, his employees Justin Nichols and John Sterling, and one other employee visited a gun show. Defendant purchased a stun gun. John Sterling purchased a 9mm handgun and a .380 caliber Kel-Tec revolver. Sterling purchased the two guns with money loaned by Defendant.

At trial, Defendant's employee Justin Nichols testified that the .380 caliber revolver was kept at the warehouse office in a desk for protection. (Rec. Doc. 254, 441:5-11). He testified that he had seen Defendant handle the gun at the warehouse. *Id.* at 441:12-14. Pou Vatthongxay, Defendant's girlfriend, testified that Defendant had brought the .380 caliber gun back to their apartment, where he stored it under the sofa for several months. (Rec. Doc. 254, 385:2-21). She testified that on the day that ICE agents executed a search warrant at the warehouse, Defendant called her and asked her to "do something" about the gun under the sofa. *Id.* at 387:2-13. She hid the gun in the fireplace, where it evaded discovery by ICE agents searching the apartment. *Id.* at 387:15-388:15. Later, Defendant asked her where she put the gun, retrieved it, and then called John Sterling to come by and pick up the gun. *Id.* at 389:2-25.

John Sterling testified that he purchased the .380 caliber gun with Defendant's money at a gun show, and that the gun was initially kept at the warehouse. *Id.* at 509:22-510:18, 512:22-513:5. Mr. Sterling testified that Defendant called him after the ICE raid on the warehouse to come to Defendant's apartment, at which time Defendant gave him the .380 caliber gun. *Id.* at 513:25-514:19. Mr. Sterling maintained possession of the gun until he handed it over to ICE

agents. *Id.* at 515:10-25. He testified that:

> The only time I seen him [Defendant] with this gun is on two occasions, when we got it that day at the gun shop and I gave it to him for the warehouse, you know, lock it up in the – but we had an alarm in there, you know, and the day he gave it back to me in the front of his house. That's the only two times.

*Id.* at 524:15-21.

The Court administered the Fifth Circuit pattern jury instruction for 18 U.S.C. § 922(g)(1), felon in possession of a firearm, as well as the pattern jury instruction on the meaning of "possession." The jury found Mr. Neuman guilty as to all five counts in the Second Superseding Indictment, including Count 5, the firearm possession charge. (Rec. Doc. 166). Sentencing took place on July 30, 2009. Mr. Neuman was sentenced to 210 months imprisonment on both Count 4 and Count 5, the firearm possession charge. (Rec. Doc. 235).[1] He appealed to the Fifth Circuit Court of Appeals, which affirmed in all respects. *United States v. Neuman*, 406 F. App'x 847 (5th Cir. 2010). He did not challenge the conviction on the firearm possession charge on appeal. *Id.* at 849 n.1.

On July 25, 2011, Defendant filed a Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Rec. Doc. 265). He submitted three "affidavits" as newly-discovered evidence purportedly calling into question his conviction on Count 5. He argued that two trial witnesses have subsequently made statements inconsistent with their trial testimony, which undermines their credibility and the version of the facts adduced at trial. The Court reviewed the submitted materials and denied the motion for a new trial on the grounds that, even if the Plaintiff had presented non-hearsay evidence, the material would not likely have

---

[1] He was also sentenced to 60 months as to Count 1 and 120 months as to Counts 2 and 3, with all terms to run concurrently.

3

resulted in an acquittal if introduced at trial.  (Rec. Doc. 278).  On May 23, 2012, Defendant filed a notice of appeal from the Court's Order and Reasons.  (Rec. Doc. 280).

On June 7, two weeks after appealing the Court's Order and Reasons denying his motion for a new trial, Defendant filed a motion for reconsideration of that same Order and Reasons.  (Rec. Doc. 282).  In support, he offered legal argument regarding the Court's alleged misconstrual of his evidence, and produced yet another affidavit from a private investigator who spoke to a trial witness.  Defendant argued that the jury heard false testimony regarding the circumstances surrounding possession of the gun and its eventual return to the possession of John Sterling, and that had the jury heard the correct testimony set forth in his submitted materials, the jury would have acquitted him on Count 5.  On June 18, 2012, the Court issued an Order and Reasons denying Defendant's motion for reconsideration.  (Rec. Doc. 284).  The Court held that it lacked jurisdiction, but noted that even if it had jurisdiction, it would deny Defendant's motion on the merits.  On June 28, 2012, Defendant filed a Notice of Appeal from that Order and Reasons as well.  (Rec. Doc. 288).

## II.     PRESENT MOTION

Defendant now moves for relief pursuant to 28 U.S.C. § 2255. (Rec. Doc. 269).  In his petition, he argues 13 instances of ineffective assistance of counsel, both at trial and on direct appeal.  These 13 instances, described in further detail below, range from the content of counsel's opening statement and closing argument to the extent of counsel's ability to prepare for sentencing.  The Government opposes each of these contentions, arguing that the vast majority are legitimate strategic decisions by counsel, and any others do not rise to the level of constitutional error.

## III. LAW & ANALYSIS

### A. Standard of Review

Habeas relief is appropriate under § 2255 when a federal prisoner asserts that his sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). In other words, the court must hold a hearing if "(1) the record, as supplemented by the trial judge's personal knowledge or recollection, does not conclusively negate the facts alleged in support of the claim for § 2255 relief; and (2) the movant would be entitled to post-conviction relief as a legal matter if his factual allegations are true." *Tucker v. United States*, 275 F. App'x 402, 404 (5th Cir. 2008) (citing *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir.1979); *United States v. Briggs*, 939 F.2d 222, 228 (5th Cir.1991).

Generally, a petitioner is barred from raising an issue for the first time on collateral appeal if he had an opportunity to raise the issue on direct appeal and failed to do so, unless the petitioner can show "both 'cause' for failing to raise the issue on direct appeal and 'actual prejudice' flowing from the errors alleged." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (citing *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)); *see also United States v. Frady*, 456 U.S. 152, 167-168 (1982). "Objective factors that constitute cause include . . . ineffective assistance of counsel in the constitutional sense." *Guerra*, 94 F.3d at 993. The instant petitioner asserts 13 separate instances of ineffective assistance of counsel.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466

U.S. 668 (1984), and its progeny. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. To obtain relief under *Strickland*, a petitioner must show both unreasonable performance by counsel and prejudice to the petitioner's case as a result of counsel's performance. Specifically, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**B.     Analysis**

   **1.     Failure to Allow Petitioner to Plead Guilty and to Advise Petitioner on Repercussions of Going to Trial**

Petitioner argues that his trial counsel prevented him from pleading guilty and receiving a lesser sentence. Petitioner claims that he had told counsel he wanted to accept the Government's offer to plead guilty, and counsel told him, "No, we're going to trial."[2] Furthermore, Petitioner claims that counsel did not advise him of the risks of going to trial, and more specifically, the maximum sentence he could receive.

The Government responds that there was no plea agreement for the Petitioner to accept or reject at the time in question; there had been an offer on the table after Petitioner was initially

---

[2] As evidence of this claim, Petitioner cites a letter to the Court dated September 23, 2008. In the same letter, Petitioner asked that his trial be held as soon as possible.

indicted, but Petitioner offered to plead guilty later in the process, after his then-girlfriend had been indicted. The Government states that it rejected that offer, and did not extend another plea offer from that point forward. Petitioner maintains that even without an offer from the Government, he would have received a two-point adjustment for acceptance of responsibility; that the felon-in-possession charge was brought in January 2009 in response to Petitioner's refusal to plead guilty; and that counsel failed to advise Petitioner on the sentencing consequences of the felon-in-possession charge and of going to trial in general.

      a.      **Claim Relating to Plea Agreement**

There is no evidence to support Petitioner's claim that his attorney prevented him from accepting a plea offer from the Government. Petitioner's cited evidence—which is part of the record of this case—supports the Government's claim that Petitioner made an offer to the Government, and not the other way around, at the time that Petitioner discusses. For example, Petitioner cites a letter he submitted to the Court, dated September 23, 2008, in which Petitioner wrote, "I had informed my attorney I would plead guilty if the charges against Ms. Vatthongxay will be dropped and no other charges is brought up against my family." (Rec. Doc. 70-1 at 2). This statement could lend support to Petitioner's claim if it were not for Petitioner's statements elsewhere in the same letter:

> After my arrest . . . I was offered a plea agreement of level 19 on the sentencing table. Your Honor, I wanted to take my case to a jury trial. If I didn't plead guilty the prosecutor had threatened to get my girlfriend Pou Vatthongxay involved. I didn't believe the prosecution would press any kind of charges against her.

*Id.* at 1. This clearly supports the Government's claim that Petitioner rejected the Government's initial plea offer (because, according to Petitioner, he doubted that Vatthongxay would actually be indicted) and then later approached the Government with his own offer to plead guilty (after his

7

predictions turned out to be incorrect).  Furthermore, in that same letter, Petitioner also requests that his trial be held "as soon as possible," with no additional continuance permitted.  *Id.* at 2. This is clearly inconsistent with Petitioner's claim in the instant motion that he still wanted to plead guilty at this time.  Petitioner's statements at sentencing are similar.  Petitioner stated at sentencing that he had told his trial counsel he would plead guilty if the charges against Vatthongxay were dropped and no charges were brought against his parents.  (Sent. Tr., Rec. Doc. 258 at 15).[3]

In short, none of Petitioner's statements prior to the instant motion corroborate Petitioner's claim that his attorney refused to allow Petitioner to plead guilty, and some of his prior statements directly contradict that claim.[4]  In the face of this contradictory evidence, Petitioner's self-serving declaration is not sufficient to raise any possibility of a finding that Petitioner is now entitled to relief.

### b. Claim Relating to Guilty Plea Without Plea Agreement

Petitioner also claims that he received incorrect advice on the consequences of going to trial on the felon-in-possession charge specifically, and the risk of going to trial generally.  The Fifth Circuit has held that incorrect advice on the maximum possible sentence a defendant faces at trial falls below the objective standard of reasonableness set out in *Strickland*.  *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995).  Furthermore, "*any* additional time in prison has

---

[3]Petitioner also points to the fact that the felon-in-possession charge was added in January 2009, after he sent the letter cited above, in an attempt to demonstrate that a plea offer from the Government was still on the table until that time.  This is extremely speculative and is directly contradicted by other evidence in the record, including Petitioner's own letter.

[4]On the contrary, as this Court noted in a previous order, Petitioner "has never given any indication to the Court that he was dissatisfied with the services of his counsel," and in fact indicated to the Court during trial "that he was pleased with his attorney's work on the case."  (Rec. Doc. 191 at 3).

constitutional significance" when determining whether the prejudice showing has been met. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

Because the record reflects that Petitioner became interested in pleading guilty only after the Government's plea offer was already off the table, the only possible sentence reduction Petitioner could have received for pleading guilty was a two-point decrease for acceptance of responsibility.[5] This could have reduced the Guidelines range for his sentence from 210-262 months to 180-210 months.[6]

To the extent that Petitioner is alleging incorrect advice on the maximum possible sentence he could have received on the felon-in-possession charge specifically, he is not entitled to relief because he cannot make the required showing of prejudice. Petitioner received concurrent sentences of 210 months on two different counts: Count 5 (the felon-in-possession charge) and Count 4 (concealing and facilitating the transportation of merchandise imported contrary to law). Thus, a two-level downward departure on Count 5 alone for acceptance of responsibility would not have resulted in a shorter amount of prison time for Petitioner.

To the extent that Petitioner argues he was misadvised on the risks of going to trial generally, Petitioner's sole support for this contention is his own statements in the memoranda in support of his motion and the accompanying declarations. Petitioner simply states that his counsel did not "explain to [Petitioner] the risks associated with proceeding to trial versus pleading guilty." (Decl. of Pet'r, Rec. Doc. 283 at 33).

---

[5]The Court notes that entering a plea of guilty does entitle a defendant to a downward departure for acceptance of responsibility, and further notes that at sentencing, Petitioner vigorously disputed his guilt of the underlying crime.

[6]For a total offense level of 31 and a criminal history category of V, the Guidelines recommendation would normally be 168-210 months. However, Petitioner's felon-in-possession offense was subject to a mandatory minimum of 15 years, or 180 months.

This conclusory allegation is unsupported anywhere in the record, despite Petitioner's extensive filings, remarks at sentencing, and correspondence with this Court. Petitioner has firmly maintained his innocence of the underlying charges throughout these proceedings, and his only complaints about his trial attorney have involved disagreements with respect to decisions that Petitioner's trial attorney made in trying the case. Following his trial, Petitioner submitted three separate letters to this Court, in which Petitioner complained of his trial attorney's inadequate performance and requested a new trial. (Rec. Docs. 178, 195, 196). Nowhere in these letters did Petitioner mention dissatisfaction with the advice he had received regarding whether to take the case to trial. Furthermore, Petitioner made extensive remarks on his behalf at sentencing, including similar complaints about his trial attorney's performance. At that point, Petitioner had inarguably become aware of the recommended Guidelines range he faced as a result of going to trial, yet he made no comments whatsoever about his counsel's advice regarding that decision.

Moreover, this Court has already specifically found that Petitioner received effective assistance of counsel at trial. In response to trial counsel's motion to withdraw (Rec. Doc. 187), this Court stated:

> Having presided over the trial in this matter, as well as the pre- and post-trial proceedings, the Court is confident that defense counsel has been a dedicated and compassionate advocate for his client. Beginning from the date of his appointment and continuing through the recent forfeiture hearing, defense counsel has brought respect, dignity, and industry to these proceedings through his level of service to the Defendant. . . . During trial, . . . counsel was fully prepared, professional, and effective, repeatedly subjecting the Government's witnesses to vigorous cross-examination. Following the trial, counsel has remained in regular contact with the Defendant, advocating not only for a favorable sentence, but also for additional medical treatment to address the Defendant's emotional condition. In short, the Court is confident that the Defendant has been well served by counsel's representation.

(Order & Reasons Denying Mot. to Withdraw, Rec. Doc. 191 at 2). Furthermore, this Court may

supplement the record with its own "personal knowledge or recollection" of Petitioner's case. *Friedman*, 588 F.2d at 1015 (internal quotation marks omitted). Based on those recollections, the Court is extremely doubtful that Petitioner's allegations of inadequate advice before trial are anything but frivolous.

In some circumstances, a court reviewing a § 2255 motion may not use its observations of in-court performance by trial counsel to make conclusions about pretrial preparation. In *Friedman*, the § 2255 petitioner made specific claims of inadequate performance supported by documentary evidence. 588 F.2d at 1016. Because of those "plausible factual allegations and evidence sufficient to raise a substantial doubt" regarding counsel's out-of-court performance, the Fifth Circuit held that it could not "dismiss the possibility raised by Friedman's petition that his court-appointed counsel, although perhaps quite competent while under the in-court scrutiny of the District Judge, was, when outside the courthouse, flagrantly derelict in fulfilling his responsibilities to Friedman." *Id.*; *see also Clark v. United States*, 606 F.2d 550, 552 (5th Cir. 1979) ("This allegation is not vague or speculative."); *Sosa v. United States*, 550 F.2d 244, 252 n.4 (5th Cir. 1977) ("[W]hen a section 2255 applicant alleges facts which are vague, conclusory, or palpably incredible, no evidentiary hearing need be held." (internal quotation marks omitted) (citations omitted)).

However, the Fifth Circuit in *Friedman* also noted that an approach focusing on in-court representation "is often conclusive" because frequently, "the court has no basis for decision outside the unvarnished and speculative allegations" of a § 2255 petition. *Id.* Furthermore, the *Friedman* court specifically held that in such circumstances—where a petition includes only "conclusory assertions" that are "raised for the first time in the motion for post-conviction relief"—a district court may be justified in dismissing the petition without a hearing. *Id.* at 1017.

11

Petitioner's allegations fall into the latter category. Petitioner took numerous opportunities before, during, and after his trial to communicate with this Court regarding the performance of his trial counsel; only now does he make any reference to counsel's advice to him before trial. Moreover, this Court's personal observation of proceedings in Petitioner's case reflect a performance by Petitioner's counsel that far exceeds the constitutional minimum. In addition, the Court notes that Petitioner's suggestion that if he had been aware of consequences of going to trial, he would have independently pled guilty to achieve a two-level reduction of his Guidelines-recommended sentence before trial is extremely speculative. As a result, Petitioner is not entitled to an evidentiary hearing on this issue.

### 2. Failure to Argue Justification Defense and to Request Jury Instruction

Petitioner argues that his trial counsel was deficient in failing to argue a defense of justification for his felon-in-possession charge. Petitioner argues that the facts of his case would have supported a defense of justification because he obtained a gun following an armed robbery of his business. The Government responds that it was a reasonable trial strategy for Petitioner's counsel to deny that Petitioner ever possessed the gun, an argument that is factually inconsistent with a defense of justification. Additionally, the Government argues that a defense of justification would not have applied to Petitioner's circumstances, since justification does not apply to the protection of a criminal enterprise. Petitioner replies that he was entitled to an instruction on both defenses despite their inconsistency. *Mathews v. United States*, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence of sufficient for a reasonable jury to find in his favor.") Petitioner further argues that he was not protecting an illegal enterprise, but rather was protecting his employees, who had no knowledge of the illegal activity (and Petitioner argues that most of

his business was not illegal, anyway).

The Government is correct that Petitioner could not have established a justification defense at trial, despite the fact that Petitioner may have obtained the firearm out of fear of a second robbery. The Supreme Court has stated that a justification defense must fail "if there was a reasonable, legal alternative to violating the law." *United States v. Bailey*, 444 U.S. 394, 410 (1980). Furthermore, the Fifth Circuit has held that a justification defense is invalid for a felon-in-possession charge when the defendant has previously fallen victim to an attempted robbery, even if the defendant possesses the firearm while he believes a second robbery attempt is *actually underway*. *United States v. Gant*, 691 F.2d 1159, 1164 (5th Cir. 1982). In that case, the Fifth Circuit noted that "the most obvious legal remedy that [the defendant] failed to pursue was simply to call the police." *Id.* The same was true of Petitioner in this case.[7]

### 3. Failure to Impeach John Sterling with Prior Inconsistent Statements

Petitioner argues that his trial counsel unreasonably failed to impeach John Sterling with prior inconsistent statements during cross-examination. Sterling testified that he had seen Petitioner with the gun twice: once when he gave it to Petitioner for the warehouse, and once when he collected it from Petitioner after the ICE search. Petitioner attaches two ICE reports from interviews of John Sterling (Rec. Doc. 269-2 at 13-19), which reflect some inconsistency in Sterling's statements with respect to the first of the two occasions described above.[8]

---

[7]Moreover, even if a justification defense had been possible for Petitioner, it would not necessarily have been constitutionally ineffective for Petitioner's counsel to pursue a different defense (i.e., that Petitioner did not possess the firearm at all) and abandon the contradictory justification defense in order to avoid confusing the jury.

[8]Petitioner also argue that Sterling's statements to ICE were inconsistent with respect to the second occasion. This is not the case. In both reports attached to Petitioner's motion, Sterling states that he picked up the gun from Neuman at his residence. (Rec. Doc. 269-2 at 14, 18).

13

Whether Petitioner's counsel was unreasonable for failing to impeach a key witness with contradictory statements is a much closer question than Petitioner's other claimed instances of ineffectiveness by his attorneys. However, there can be no question that Petitioner is ineligible for relief on this basis because Petitioner cannot show he was prejudiced by counsel's actions. Sterling's statements were consistent that he had received the gun from Petitioner following the ICE search; this alone would have been sufficient to convict Petitioner on Count 5 of the indictment. Moreover, two other witnesses—Justin Nichols and Pou Vatthongxay—both gave testimony that supported such a charge. In particular, Vatthongxay's testimony corroborated Sterling's repeated statements that he had picked up the gun from Petitioner following the ICE search. As such, Petitioner cannot show that there is a reasonable probability that, if counsel had impeached John Sterling on one set of inconsistent statements, Petitioner would not have been convicted of possessing a firearm.

### 4. Concession of Guilt in Closing Argument

Petitioner argues that during closing argument, counsel prejudiced his case by conceding that he should not have been selling the items at issue. Petitioner argues that counsel "prejudiced [Petitioner's] defense and abandoned his duty of loyalty to [Petitioner] by intentionally weakening his case with contradictory closing argument," because counsel's overall strategy at trial was to argue that Neuman did not know the goods were counterfeit. (Pet'r's Mot. at 17). The Court disagrees that the statements cited by Petitioner are inconsistent with this strategy and notes that elsewhere in his closing argument, Petitioner's counsel explicitly argued that Petitioner did not know the goods were counterfeit. (Trial Tr. at 555, 556, 557, 559, 561). Moreover, the Court finds that it was an objectively reasonable strategic decision for counsel to concede the issue of whether the goods were counterfeit. As the Government notes in its opposition, conceding an

14

easily provable factual issue such as this one is a common and sound defense tactic.

5. **Concession of Guilt in Opening Statement**

Similarly, Petitioner argues that his trial counsel unreasonably conceded that the goods at issue were counterfeit during his opening statement. For the same reasons as above, Petitioner's claim in this regard is not meritorious. Furthermore, the Court notes the vast difference in degree between conceding a single, easily provable element of an offense to focus on disputing a different, harder-to-prove element, as in this case, and conceding Petitioner's guilt on the underlying charge itself, as in *Florida v. Nixon*, 543 U.S. 175 (2004).

6. **Failure to Investigate Background of Daniel Escher**

Petitioner argues that his trial counsel was ineffective in failing to investigate the background of Daniel Escher, the Government's expert witness on the authenticity of the merchandise. According to Petitioner, counsel stipulated to Escher's qualification as an expert witness as part of his strategy of not contesting that the items were counterfeit. However, Petitioner argues that this stipulation prejudiced him because he claims that counsel could have successfully challenged Escher's qualifications. It is not entirely clear to the that Court this claim is true, but regardless, Petitioner's counsel's decision to enter into this stipulation was reasonable and in accordance with his trial strategy described above, especially given counsel's decision to cross-examine Escher on the extent of counterfeiters' skills and the difficulty of identifying counterfeit goods. (Trial Tr. at 298-99).

7. **Failure to Appeal Firearm Conviction**

Petitioner argues that his appellate counsel unreasonably failed to appeal Petitioner's firearm conviction on the grounds of insufficient evidence. In addition to the inconsistency in Sterling's testimony described above, Petitioner argues that (1) Vatthongxay's testimony that she

15

hid the gun in the fireplace is inconsistent with the fact that ICE agents did not find it during their search, and (2) Petitioner's former employee Valentine Gomez testified to never having seen the Petitioner with the gun during his employment. In focusing on these small pieces of arguably contradictory evidence, Petitioner ignores the ample evidence that *did* support his conviction. Among this evidence is the fact both Sterling and Vatthongxay testified consistently to Petitioner's having handed the gun to Sterling after the search. This fact alone is sufficient evidence to support Petitioner's firearm conviction. There is not a reasonable probability that Petitioner would have prevailed on an appeal claiming insufficient evidence to support his conviction.

### 8. Failure to Object to Admission of Murdock Testimony

Petitioner argues that his appellate counsel unreasonably failed to object to the testimony of Arthur Murdock as in violation of the Sixth Amendment. Murdock testified about remarks Petitioner made while the two man were sharing a jail cell. Petitioner argues that this testimony violates *Massiah v. United States*, 377 U.S. 201 (1964), which prohibits the government from eliciting incriminating statements from a defendant in the absence of counsel once the Sixth Amendment right to counsel has attached. Petitioner alleges that on one occasion, Murdock encouraged Petitioner to plead guilty and then summoned a correctional officer and asked to be moved; a correctional officer then told Petitioner that "Murdock had been debriefing with the government." (Pet'r's Reply, Rec. Doc. 283 at 19). Petitioner argues that this constitutes "objective evidence that [Murdock] was an agent of the government" at this time. *Id.* The Court disagrees that these allegations, even if accepted as evidence, would demonstrate that Murdock was enlisted by the Government to elicit testimony from Petitioner in violation of *Massiah*. The mere fact that Murdock acted as a jailhouse informant—including consultation with the

16

government—does not prove that the Government enlisted him beforehand, and it was not unreasonable for counsel to decline to argue that the Government did so.

9.     **Failure to File Rule 29 Motion for Judgment of Acquittal**

Petitioner argues that his trial counsel was ineffective in failing to file a Rule 29 motion for a judgment of acquittal. Petitioner argues that there was sufficient evidence to establish that Petitioner was not guilty of all five counts charged in the indictment, and that therefore, there was a reasonable probability that Petitioner would have been acquitted if such a motion had been filed. Petitioner argues that the Government's case "pile[s] inference upon inference" in violation of *United States v. McDowell*, 498 F.3d 308, 314 (5th Cir. 2008), and other cases. The Court disagrees. Direct evidence of *mens rea* is rarely available, and the mere fact that inferences were drawn does not mean that the standard set out in *McDowell* was violated. *See., e.g.*, *United States v. Garza*, 990 F.2d 171, 174 (5th Cir. 1993) ("The knowledge element in a possession case can rarely be established by direct evidence."). In this case, counsel's failure to file a Rule 29 motion did not prejudice the Petitioner.[9]

10.    **Failure to Present Additional Evidence at Trial**

Petitioner argues that his trial counsel unreasonably failed to introduce several pieces of relevant evidence: Petitioner's 2006 tax return, wire transfers to legitimate companies for purchases of merchandise, invoices reflecting purchases of merchandise from close-out sales, and a contradictory email sent by an eBay customer to Ms. Vatthongxay.[10] Petitioner argues that as a result, his trial was permeated with unfairness, and therefore counsel's performance was

---

[9]This is especially true since Petitioner could not have prevailed on an appeal on the grounds of insufficient evidence to support his felon-in-possession conviction.

[10]Counsel's failure to impeach John Sterling with prior inconsistent statements is considered above.

17

constitutionally ineffective. *E.g.*, *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). Petitioner cites cases such as *Wilson v. Butler*, 813 F.2d 664 (5th Cir. 1987), for the proposition that counsel's failure to present material evidence cannot be considered reasonable trial strategy. However, those cases are inapposite because they involve vastly more important evidence than what Petitioner points to here. None of the evidence that Petitioner cites is "material"; it does not relate directly to an element of a charged offense (or, as in *Wilson*, a major sentencing factor such as a severe mental disability). While these pieces of evidence may have had some impact on the jury, the Court cannot say that, were they admitted, there would be a reasonable probability of an acquittal. Defense counsel is not constitutionally obligated to introduce every piece of relevant evidence that would reflect favorably on the defendant or lend indirect support to his case.

### 11. Failure to Appeal Denial of Motion for Continuance

Petitioner argues it was unreasonable for counsel not to appeal this Court's denial of his motion for a continuance even though counsel reported feeling unprepared for trial. However, as the Government notes, the disposition of a motion to continue is left to the discretion of the trial court and will not be disturbed on appeal absent a showing that the trial court abused its discretion. *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976) (citations omitted). This Court offered an adequate explanation for its decision to deny Petitioner's motion to continue, so it was reasonable for counsel to decline to pursue what would have been a non-meritorious appeal.

### 12. Failure to Object to Lack of Access to Trial Transcripts at Sentencing

Petitioner argues that his counsel at sentencing was ineffective in failing to object to his lack of access to the transcripts of Petitioner's trial. Petitioner argues that because his counsel at sentencing did not have these transcripts, he was unable to properly challenge the Government's

position on loss calculations, which affected the sentencing range recommended by the Guidelines. Petitioner contends that his sentencing counsel's inability to consult the trial transcripts amounted to a denial of due process because counsel was unable to prepare adequately for Petitioner's sentencing. Petitioner also argues that his appellate counsel was ineffective in failing to appeal this Court's denial of Petitioner's request for a continuance to allow sentencing counsel to prepare. Petitioner claims that this Court effectively deprived Petitioner of his right to counsel by denying his request. Petitioner claims that this Court incorrectly stated that this was Petitioner's ninth attorney and denied his motion on this basis.

The Government responds that Petitioner had no right to a transcript of his trial before sentencing. *See United States v. Arthur*, 432 F. App'x 414, 430 (5th Cir. 2011) ("[The defendant] cites no authority for the proposition that the district court was required to provide her with a transcript before sentencing . . . ."). The Government also argues that Petitioner has not explained how access to trial transcripts (which Petitioner now has) would have enabled defense counsel to challenge the loss determination at sentencing.

First, the Court notes that Petitioner's claim that he had only two attorneys is incorrect. Mr. Ratliff was, in fact, the ninth attorney to be assigned to Petitioner's case. Thus, this Court did not base its denial of Petitioner's motion to continue on incorrect information. Moreover, Petitioner's appellate counsel was not ineffective in failing to appeal this Court's denial of Petitioner's motion to continue because this Court was well within its discretion to deny a motion to continue filed two days before sentencing. *See United States v. Peden*, 891 F.2d 514, 520 (5th Cir. 1989) (upholding denial in similar circumstances).

Second, without deciding whether Petitioner actually had a right to trial transcripts at sentencing, the Court finds that Petitioner has not adequately explained how this lack of access

19

prejudiced him. Pursuant to Rule 32, Petitioner and his counsel received a copy of the presentence investigation report (PSR) used at sentencing and had an opportunity to object to its contents. "The PSR itself put [Petitioner] on notice of the factual allegations upon which his sentence recommendation would be based. It was not necessary to review the entire . . . transcript [of Petitioner's trial] in order to address the facts alleged in the PSR." *United States v. Clay*, 579 F.3d 919, 929 (8th Cir. 2009). Petitioner refers vaguely to "trial evidence" that defense counsel could have used at sentencing, but he does not even attempt to identify this evidence or explain why the PSR was inadequate. Therefore, the Court cannot grant relief to Petitioner on this basis.

### 13. Failure to Object to Constructive Amendment to Indictment

Petitioner argues that because the jury instructions did not mention counterfeit Nike shoes specifically, they constituted a constructive amendment of the indictment, to which Petitioner's counsel unreasonably failed to object both at trial and on appeal. The Court disagrees. In order to constitute a constructive amendment, the jury instructions would have had to "effectively modi[y] an essential element of the offense charged or permit[] the government to convict the defendant on a materially different theory or set of facts." *United States v. Reasor*, 418 F.3d 466, 477 (5th Cir. 2005). Failure to specify in the jury instructions that "counterfeit marks" or "counterfeit shoes" referred to counterfeit Nike items does not meet this standard.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED Defendant's motion to vacate under 28 U.S.C. § 2255 (Rec. Doc. 269) is DENIED.

New Orleans, Louisiana, this 3rd day of August, 2012.

*/s/ Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE